**Evelyn ACOSTA PEREZ,
et al., Plaintiffs,**

v.

**Jose GUILLERMO RODRIGUEZ,
et al., Defendants.**

**Civil No. 98–2104 (JAG).**

United States District Court,
D. Puerto Rico.

June 21, 2002.

Israel Roldan-Gonzalez, Aguadilla, PR, for Plaintiffs.

Marie L. Cortes-Cortes, Commonwealth Dept. of Justice, Federal Lit. Div., San Juan, PR, Juan R. Gonzalez-Munoz, Gonzalez Munoz Law Office, PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On May 21, 2002, defendants Municipality of Mayaguez ("Mayaguez"), its Mayor, Jose Guillermo Rodriguez ("Rodriguez"), and Enrique Rosa–Lopez ("Rosa–Lopez")(collectively, "defendants") moved for summary judgment on plaintiffs's civil rights claims brought pursuant to 42 U.S.C. § 1983 and state constitutional law. (Docket No. 57.) Defendants also filed a Statement of Uncontested Material Facts, as required by Local Rule 311(12). Plaintiffs [1] have not filed an opposition. Upon review of the record, and following application of Local Rule 311(12), the Court grants the motion.

## FACTUAL BACKGROUND[2]

Plaintiffs, who are all former employees of the municipality of Mayaguez, contend that they were members of the Popular Democratic Party ("PDP") and supported legislative candidate Ferdinand Lugo ("Lugo") against defendant Rodriguez's candidate in the primary elections held in 1995. Rodriguez has served as Mayaguez's Mayor since 1993. Lugo prevailed in the primaries, and plaintiffs allege that Rodriguez thereafter engaged in a political persecution of all Lugo supporters in retaliation for their support. They further argue that defendant Rosas–Lopez, then-Human Resources Director of the municipality, systematically harassed them by telling them that they would be dismissed from their positions due to their support of Lugo. All plaintiffs were eventually dismissed from their positions with the municipality.

Plaintiffs allege that Rodriguez gave favorable treatment to those municipal employees who supported his political faction, either by retaining them in municipal positions prior to the adoption of the layoff plan, or by selectively hiring them to tran-

---

1. The Complaint filed on October 1, 1998, brought claims on behalf of thirty named plaintiffs. On August 23, 2001, the Court entered partial judgment dismissing plaintiff Aida Mendez–Dalmau's claims. (Docket No. 29.) On January 23, 2002, the Court entered judgment dismissing plaintiffs Urselio Alvarez–Toro, Maria A. Gonzalez–Acevedo, Luis Lopez–Castanon, Norma Martinez–Denizard, and Alida Rosario–Vargas's claims. (Docket No. 43.) On April 9, 2002, the Court dis-

missed plaintiffs Marilia Rivera–Rodriguez, Carmen Cruz–Sanchez and Alba Montalvo–Vargas's claims with prejudice. (Docket No. 52.) Accordingly, twenty-one plaintiffs remain in the case.

2. Given the application of Local Rule 311(12), all material facts contained in defendants's Statement of Uncontested Material Facts are deemed admitted.

sitory positions within the year following the implementation of the layoff plan. In sum, plaintiffs claim that the implementation of the layoff plan—stemming from the privatization of a municipal hospital—was used as a pretext to harass, and ultimately dismiss, plaintiffs from their employment.

As a result of the Commonwealth government's decision to establish an island-wide health reform plan, the municipality's leaders realized that they would be unable to maintain the municipality's public health system in operation, since the combined costs of the health reform and its own public health system would be prohibitive. Rodriguez thereafter proposed to the Municipal Assembly that the municipality privatize the administration of health services provided at the San Antonio municipal hospital. On April 17, 1996, the Municipal Assembly approved a contract between the municipality and Hospital San Antonio, Inc. Municipal Ordinance 112 required the municipality to make all efforts to minimize the impact of privatization of the municipal hospital on its employees.

On May 19, 1997, Rodriguez adopted a layoff plan to regulate any personnel layoffs as a result of lack of funds, work shortages, reorganization, the implementation of technological advances, or the privatization of governmental services. On that same date, the Municipal Assembly ratified the layoff plan. On March 24, 1998, Rodriguez notified all municipal employees of the layoff plan. On March 16, 1998, Rosas Lopez sent a letter to all municipal employees affected by the layoff plan. The letter contained a Notice of Seniority reflecting the time each employee worked for the municipality. On March 30, 1998, Rodriguez sent a letter to all affected employees, regarding the implementation of the plan.

On May 4, 1998, Rosas Lopez sent a second letter to all affected employees with information reflecting the time each

employee worked for the municipality. Those employees who did not agree with the seniority information provided by the municipality were allowed to submit evidence to challenge the information that was provided to them. The municipality thereafter prepared a Seniority List of all of the municipal hospital's career employees reflecting each employee's hiring date, seniority, position title and classification. On May 6, 1998, the municipality provided all affected employees with notice of their effective layoff date and of their right to appeal the decision to the Puerto Rico Personnel System's Appeals Board.

On June 9, 1998, Rodriguez sent a letter to all affected employees confirming their termination. On June 29, 1998, he sent a subsequent letter informing them of a change in the effective layoff date. The municipality thereafter prepared a seniority-based Reinstatement Registry, and on July 1, 1998, Rodriguez sent a letter to all affected employees informing them of their inclusion in the Reinstatement Registry. On July 31, 1998, Rodriguez informed them that the layoff would be effective August 31, 1998.

On September 1, 1998, Rodriguez sent all affected employees a letter informing them that they had been included in the Reinstatement Registry, and that the registry would be in effect for a year. On September 1, 1999, Rosas Lopez sent a letter to all effected employees to inform them that the one-year effective period of the Reinstatement Registry had elapsed and that the registry would be eliminated.

## DISCUSSION

### I. *The Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

**184**

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate "an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Local Rule 311(12) requires the moving party to file and annex to the motion a "separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried," properly supported by specific references to the record. Similarly, the rule requires the non-moving party to file a statement of contested material facts. All material facts set forth in the moving party's statement *"will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."* (Emphasis supplied.) The First Circuit has consistently upheld the validity of Local Rule 311(12). *See, e.g., Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001); *Rivas v. Federacion de Asociaciones Pecuarias,* 929 F.2d 814, 816 n. 2 (1st Cir.1991).

■ As noted earlier, plaintiffs have failed to oppose defendants's summary judgment motion. Thus, plaintiffs have failed to comply with the so-called "anti-ferret rule," as they have not presented a concise statement of material facts as to which there is a genuine issue to be tried. The Court is not required to "ferret through the record" lurking for facts that may favor plaintiffs when those facts were not proffered under a counter-designation of facts as required by Local Rule 311(12). *Morales,* 246 F.3d at 33. "When a party opposing a motion for summary judgment fails to comply with the 'anti-ferret rule,' the statement of material facts filed by the party seeking summary judgment [shall be] deemed ... admitted." *Mendez Marrero v. Toledo,* 968 F.Supp. 27, 34 (D.P.R. 1997); *Tavarez v. Champion Prods., Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

■ Here, plaintiffs took the risk "to sit idly by and allow the summary judgment proponent to configure the record." *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991). Although the nonmovant's failure to provide a statement of contested material facts does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road towards an easy dismissal." *Mendez Marrero,* 968 F.Supp. at 34. Since all material facts in defendants's statement of uncontested material facts are deemed admitted, the Court need only examine whether, given the uncontested facts, defendants are entitled to judgment as a matter of law.

## II. *The 42 U.S.C. § 1983 Claim*

■ To prevail in a § 1983 claim, plaintiffs bear the burden of showing that defendants, acting under color of state law, deprived them of their federal constitutional rights, privileges, or immunities. *See, e.g., Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 32 (1st Cir.1996). Plaintiffs must also establish a causal link between defendants' alleged conduct and the alleged deprivation of their federally protected rights. *See Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir. 1989).

■ In the summary judgment context, plaintiffs "bear the initial burden of showing that political discrimination was a substantial or motivating factor in [defendants's] employment decision." *See Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir.1992)(*citing Mt. Healthy City*

*School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). If plaintiffs meet their initial burden, the burden then shifts to the defendants to show that they would have made the same decision regardless of the plaintiffs' political affiliation. *Aviles–Martinez,* 963 F.2d at 5; *Rodriguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 39 (1st Cir.1993). Either this "but for" causation test, or the defendants's "Mt. Healthy defense" ensures that plaintiffs "who would have been dismissed in any event on legitimate grounds [are] not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action." *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993).

■ In light of the uncontested facts that the Court has adopted pursuant to Local Rule 311(12), there is insufficient evidence on the record for the plaintiffs to even meet their initial burden under the *Mt. Healthy* test. Simply put, the admitted facts do not permit a showing that defendants's employment decisions evinced a politically discriminatory animus. Because plaintiffs's 42 U.S.C. § 1983 claim "lack[s] any specific evidence" of political discrimination, much less that such evidence was a substantial or motivating factor in the defendants' decision, *Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 8 (1st Cir.2000), it must be dismissed.

### CONCLUSION

For the foregoing reasons, the Court dismisses plaintiffs's federal claim with prejudice. The Court dismisses plaintiffs's state law claims without prejudice, pursuant to 28 U.S.C. § 1367.

IT IS SO ORDERED.