**Ruben Feliciano TIRADO, et al., Plaintiffs,**

v.

**JOHNSON & JOHNSON D.O.C., INC., et al., Defendants.**

**Civil No. 01–1324(JAG).**

United States District Court, D. Puerto Rico.

Jan. 14, 2003.

Ferdinand Vargas–Velazquez, Caguas, PR, for Plaintiffs.

Carl E. Schuster, Lourdes C. Hernandez–Venegas, Schuster, Usera, Aguilo & Santiago, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On November 4, 2002, defendants Johnson & Johnson Dental Care Company Puerto Rico, Inc. ("J & J"), and Medical Card Systems, Inc. ("MCS")(collectively, "defendants") moved for summary judgment on plaintiff Ruben Feliciano Tirado's ("Feliciano") ERISA claim. (Docket No. 42.) On December 10, 2002, the Court issued an order stating that it would regard the motion as unopposed.[1] (Docket No. 49.) Upon review of the record, and after application of this District's Local Rule 311.12, the Court grants the motion.

---

1. On December 16, 2002, Feliciano moved for partial reconsideration of the Court's order. The Court denied the motion.

## FACTUAL BACKGROUND[2]

J & J maintains a Long Term Disability Plan (the "LTD Plan") for its employees. The J & J Pension Committee (the "Pension Committee") administers the LTD Plan and has authority to make decisions regarding eligibility for benefits under the Plan. Its authority includes responsibility for adjudicating all claims and claims appeals.

Pursuant to the LTD Plan, the Pension Committee entered into a contract with MCS to act as its Claims Service Organization, the entity that would administer the medical aspects of the LTD Plan. Under the contract, MCS has full discretion to process, authorize and deny all claims for benefits under the LTD Plan. In addition, MCS is authorized to evaluate and determine a participant's continued eligibility to receive benefits under the LTD Plan. The Pension Committee designated its own sub-committee, the J & J Disability Review Committee, to review all long-term disability second-level ERISA appeals.

In order to qualify for benefits under the LTD Plan, participants must comply with a series of terms and conditions. Specifically, a plan participant must meet the definition of "total disability" set forth in the LTD Plan. To satisfy that definition, the plan participant must have been unable to perform the duties of his or her own job for the first two years of the disability period. Upon the expiration of that period, the participant must show that he or she is unable to perform the duties of any job for which he or she is or may reasonably become qualified by training, education, or experience. The participant must also show that he or she has been

---

2. Unless otherwise noted, the Court draws from defendants's "Statement of Uncontested Facts" (Docket No. 42 at 4–13).

under the regular care of a physician for his or her condition. Failure to cooperate with the process to determine continued eligibility for benefits can constitute grounds for cancellation.

In January 1992, as a result of a work-related accident that left Feliciano legally blind in his right eye, defendants awarded him LTD benefits pursuant to the J & J Plan. Upon the expiration of the two-year period following this decision, Feliciano was required to establish that he was "totally disabled" pursuant to the second definition of the LTD Plan. Accordingly, MCS conducted a review of Feliciano's eligibility for continued LTD benefits. On July 29, 1997, MCS referred Feliciano to Dr. Ana M. Pico for an independent medical evaluation. Dr. Pico concluded that Feliciano has suffered damage to his right eye that limited his ability to perform any occupations that required binocular vision. She did not conclude, however, that Feliciano's condition rendered him totally disabled to perform the functions of any occupation for which he might reasonably become qualified.

Since Feliciano had received treatment for a mental condition, MCS also referred him to Dr. Raul Lopez for an independent psychiatric evaluation. On March 10, 1998, Dr. Lopez noted that although Feliciano described his ability to perform tasks as minimal, he was nevertheless able to take care of his personal needs, use money, watch television, take public transportation, use the telephone, and drive an automobile. In sum, Dr. Lopez did not find Feliciano to be totally disabled.

MCS thereafter referred Feliciano to an independent psychological evaluation. On April 21, 1998, Dr. Fernando Medina Martinez concluded that test results suggested an apparent deteriorated mental health, including depression, which made it difficult for Feliciano to perform the tasks required for daily living. On May 21, 1998, relying on this opinion, MCS decided to grant continued LTD benefits to Feliciano, although it advised him that it would re-evaluate his eligibility status in six months.

On December 30, 1998, as part of the continued eligibility evaluation, MCS referred Feliciano to Dr. Lopez for an independent psychiatric evaluation. Dr. Lopez examined Feliciano on January 14, 1999. He concluded that Feliciano's ability to perform simple tasks was "mildly limited by his mental condition" and again opined that Feliciano might be exaggerating his symptoms. Dr. Lopez recommended that Feliciano subject himself to a Test of Malingering Memory ("TOMM").

On February 10, 1999, MCS referred Feliciano to another independent psychiatric evaluation. On May 25, 1999, Dr. Lopez (the doctor who examined Feliciano) concluded that Feliciano had a minimal impairment, but nothing beyond that. On August 4, 1999, MCS again referred Feliciano for an independent medical evaluation. Feliciano cancelled his scheduled August 18, 1999 appointment, as he was suffering from a headache. On September 9, 1999, MCS informed Feliciano of its decision to cancel LTD benefits because he had failed to cooperate with the evaluation process. MCS advised Feliciano of his right to appeal the decision.

On October 1, 1999, Feliciano submitted a first-level appeal of MCS's decision to cancel his disability benefits. As part of his appeal, Feliciano included a September 24, 1999 communication by Dr. Amanda Fernandez which stated that she had treated Feliciano for headaches and hypertension, a condition he had presented for years. Feliciano also submitted an April, 1992 medical report by Dr. Jose Hernandez, which stated that Feliciano had been diagnosed with migraines. Feliciano did

not include copies of any records or progress notes of his treatment with either doctor.

On December 8, 1999, MCS denied Feliciano's appeal. MCS concluded that Feliciano had failed to submit evidence showing a regular course of treatment for migraines or hypertension. Moreover, MCS alluded to Feliciano's lack of cooperation regarding the September 18, 1999 medical evaluation. MCS advised Feliciano that he could file a second-level appeal within sixty days of its decision, and that he could include additional objective medical evidence for its review and consideration.

On February 8, 2000, Feliciano filed a second-level appeal. He included additional medical records and evaluations from a different set of doctors. On February 16, 2000, MCS informed Feliciano that it would refer his appeal to the Pension Committee. The Pension Committee determined that it would provide Feliciano with an opportunity to undergo the independent psychiatric evaluation that was suspended in August, 1999. The Pension Committee therefore postponed its review until it received the complete file, including the latest evaluation.

On March 20, 2000, MCS referred Feliciano for an independent psychiatric evaluation with Dr. Lopez, and for a TOMM test. On April 4, 2000, Dr. Lopez performed a medical evaluation and administered the TOMM test. The results pointed to malingering. Additionally, Dr. Lopez concluded that Feliciano had provided a less than optimal level of effort during his examination. Dr. Lopez concluded that Feliciano was only mildly impaired by his mental condition.

On May 10, 2000, MCS referred Feliciano's complete file to the Pension Committee for a second-level appeal. On July 14, 2000, the Pension Committee affirmed MCS's decision to cancel Feliciano's LTD benefits, as Feliciano had failed to satisfy "the second definition of total disability set forth in the LTD Plan." The Pension Committee also concluded that "none of the medical reports submitted supported an inability to perform **any occupation** which does not require binocular vision." (Emphasis in original.)

On October 2, 2000, Feliciano sought reconsideration. On October 24, 2000, MCS informed Feliciano that it would not consider his request, since he had exhausted available Plan remedies and the Pension Committee had rendered a final decision.

## DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate "an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### B. *Local Rule 311.12*

Local Rule 311.12 requires the moving party to file and annex to the motion a "separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried," properly supported by specific references to the record.

Similarly, the rule requires the non-moving party to file a statement of contested material facts. All material facts set forth in the moving party's statement *"will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."* (Emphasis supplied.) The First Circuit has consistently upheld the validity of Local Rule 311.12. *See, e.g., Morales v. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001); *Rivas v. Federacion de Asociaciones Pecuarias,* 929 F.2d 814, 816 n. 2 (1st Cir.1991).

█ As noted earlier, Feliciano did not timely oppose defendants' summary judgment motion. As a result, he has failed to comply with the so-called "anti-ferret rule," as he has not presented a concise statement of material facts as to which there is a genuine issue to be tried. The Court is not required to "ferret through the record" lurking for facts that may favor plaintiff when those facts were not proffered under a counterdesignation of facts as required by Local Rule 311.12. *Morales,* 246 F.3d at 33. "When a party opposing a motion for summary judgment fails to comply with the 'anti-ferret rule,' the statement of material facts filed by the party seeking summary judgment [shall be] deemed ... admitted." *Mendez Marrero v. Toledo,* 968 F.Supp. 27, 34 (D.P.R. 1997); *Tavarez v. Champion Prods., Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

█ Here, Feliciano took the risk "to sit idly by and allow the summary judgment proponent to configure the record." *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991). Although the nonmovant's failure to provide a statement of contested material facts does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road towards an easy dismissal." *Mendez Marrero,* 968 F.Supp. at 34. Since all material facts in defendants'

statement of uncontested material facts are deemed admitted, the Court need only examine whether, given the uncontested facts, defendants are entitled to judgment as a matter of law.

## C. *Feliciano's ERISA Claim*

█ The Court will review Feliciano's ERISA claim under an "arbitrary and capricious" standard. *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 583 (1st Cir.1993); *Terry v. Bayer Corp.,* 145 F.3d 28 (1st Cir.1998); *Recupero v. New England Telephone & Telegraph Co.,* 118 F.3d 820 (1st Cir.1997). Typically, courts apply *de novo* review on claims for denial of benefits brought under 29 U.S.C. § 1132(a)(1)(B), unless "a benefits plan ... clearly grant[s] discretionary authority to the administrator." *Rodriguez–Abreu,* 986 F.2d at 583. Where the administrator has such discretion, courts apply a "deferential arbitrary and capricious standard of judicial review." *Recupero,* 118 F.3d at 827. Such is the case here. "It is, of course, the hallmark of such review that a court is not to substitute its judgment for that of the [decision-maker]." *Terry,* 145 F.3d at 40 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)) (internal citations omitted).

In this case, the LTD Plan conferred discretionary authority to the Pension Committee, which in turn designated MCS to act as the Claims Service Organization. The LTD Plan plainly specified the extent of discretionary authority that the Pension Committee would have to make decisions concerning eligibility for benefits. Given such a clear delegation of authority, the Court need only decide whether the Pension Committee's decision to deny Feliciano's claim was arbitrary, capricious, or devoid of substantial evidentiary support.

The Court concludes that the plan administrator did not abuse its discretion in reaching its decision. The defendants relied, at least in part, on independent medical reports which suggested that Feliciano was not "totally disabled" as defined in the LTD Plan. The Pension Committee's reliance on the opinion of its independent medical consultant, even in the face of conflicting opinions provided by Feliciano, provided "ample evidence" to support its decision to deny disability benefits. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602 (5th Cir.1994); *see also Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir.1994)(holding that MetLife's denial of benefits was not arbitrary and capricious when its decision simply came down to a permissible choice between the position of UMAC, MetLife's independent medical consultant, and the position of [the claimant's physicians]); *Bolling v. Eli Lilly & Co.*, 990 F.2d 1028, 1029 (8th Cir.1993).

The Court need not go further. The record contains substantial evidence to support the Pension Committee's decision to deny Feliciano's claim for disability benefits. Even if the Court might disagree with the decision, there is no basis in the record for concluding that it was an abuse of discretion. Accordingly, the Court will dismiss Feliciano's ERISA claim, as well as all other claims (medical expenses, attorney's fees) ancillary to it.

## CONCLUSION

For the foregoing reasons, the Court **grants** defendants' motion for summary judgment. Judgment shall enter accordingly.

IT IS SO ORDERED.