**Lionel LUGO RODRIGUEZ, et al., Plaintiffs,**

v.

**PUERTO RICO INSTITUTE OF CULTURE, et al., Defendants.**

**Civil No. 01–2325 (JAG).**

United States District Court, D. Puerto Rico.

Aug. 9, 2002.

Mauricio Hernandez–Arroyo, Ponce, PR, for Plaintiffs.

Elisa Bobonis–Lang, Guaynabo, PR, Jose A. Santiago–Rivera, Commonwealth Department of Justice, Federal Litigation Division, Ayxa Rey–Diaz, Manuel Velazquez, Francisco J. Colon–Pagan, Colon, Colon & Martinez, San Juan, PR, Edgar R. Vega–Pabon, Bayamon, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[*]

This is an action brought by plaintiffs, Dr. Lionel Lugo Rodriguez ("Lugo") ARPO, S.E., d/b/a Plaza Suroeste Mall ("Mall"), Plaza Oasis & Hotel Oasis Inc., Southwest Investment Corporation and Inn Management (collectively, "plaintiffs") against Federal Insurance Company ("Federal Insurance"), Puerto Rico Institute of Culture ("PRIC"), Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Héctor Cazul, Mildred González Valentín, Collection Center for Municipal Income ("CRIM"), Ramón Nazario, Carlos Martínez, Manuel Velázquez, Orlando Mas, Orlando Hernández, and Osvaldo González Aviles, all sued in their individual and official capacities (collectively, "defendants"). The verified complaint asserts four causes of action against the defendants. (1) a civil claim for damages under the Organized Crime and Control Act of 1970, Pub.L. No 91–452, Section 901(a), 84 Stat. 941, Racketeering Influenced and Corrupt Organization ("RICO"); (2) a claim for violation of plaintiffs civil rights under 42 U.S.C. § 1983, 1985 and 1986 premised under certain acts and omissions of defendants under color of state law; (3) a tort claim pursuant to Article 1802 of the Puerto Rico Civil Code ("the Code"); and (4) a claim for vicarious liability under Article 1803 of the Code. Currently pending before the Court are defendants' motion to dismiss and for summary judgment (Docket Nos. 15, 39, 65, and 87).[1] The Court will grant these motions for the reasons set forth below.[2]

## FACTUAL BACKGROUND

The facts that originate this case began in 1987 when Lugo purchased some real estate consisting of a lot and a building in San Germán. Lugo wanted to develop a commercial project in the lot and building. On January 21, 1988 Lugo applied for the required permits and submitted a preliminary construction plan for a Mall to the Puerto Rico Administration of Regulations and Permits ("ARPE"). On July 20, 1988, ARPE responded with a "Notice of objection" pursuant to which Lugo had to submit an endorsement from PRIC for the proposed construction because of certain historical tunnels that could be affected by the construction. Lugo then submitted the preliminary Mall construction plans to PRIC.

PRIC informed Lugo that it would approve the preliminary construction plans only if certain recommendations it was making regarding the three façades of the building existing in the property were in-

---

[*] Mario Arroyo, a third year student at Tulane Law School, assisted in the research and preparation of this opinion.

1. CRIM filed a motion to dismiss. (Docket No. 15). PRIC filed a motion to dismiss and for summary judgment. (Docket No. 39). Federal Insurance moved to join PRIC's motion to dismiss and summary judgment and filed a motion for partial summary judgment (Docket Nos. 55 and 65.), which has been recently opposed by the plaintiffs and the PRIC. (Docket Nos. 102 and 104.) Individual co-defendants Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Mildred González Valentín, Ramón Nazario, Carlos Martínez, Orlando Mas, and Orlando Hernández filed a motion to join PRIC's motion to dismiss.

(Docket No. 87). Individual co-defendants Héctor Cazul, Manuel Velázquez, and Orlando González Aviles have not responded to the plaintiffs' claims.

2. The Court finds it unnecessary to decide Federal Insurance's motion for partial summary judgment based on the absence of insurance coverage in view of its decision on PRIC's motion to dismiss and/or for summary judgment which was joined by Federal Insurance. This joinder results in Federal Insurance's dismissal from the suit together with PRIC, and to that extent moots Federal Insurance's request for partial relief based on lack of insurance coverage.

corporated to the final construction plans, in addition to the preservation of the historical tunnels. (Docket No. 39 at 3). Lugo submitted the letter from the PRIC to ARPE for its consideration. ARPE construed the letter as an authorization of PRIC for the proposed preliminary construction plans and conditionally approved them. ARPE stated that the endorsement of PRIC was conditioned on the inclusion of the recommendations regarding the façades in the final construction plans. (Docket No. 39 at 3).

On February 16, 1989, architect López Reyes, representing PRIC, made several observations to Lugo regarding the amended construction plans submitted by Lugo, as well as the initial PRIC recommendations respecting the preliminary construction plans, and requested that these observations be incorporated as soon as possible. (Docket No. 39 at 3). In response, Lugo, through architect Héctor L. Torres of Archicorps (a consulting firm hired by Lugo) sent a letter to PRIC, informing that ARPE was requiring its endorsement for the project. In the letter, Lugo stated that only one of the three façades of the original building would not be modified. He also indicated that since so little of the building remained on the lot, the structure to be built would be made out of steel and the characteristics of the architecture and the new amended plans would incorporate elements that would be more adequate to the operation of a shopping center. (Docket No. 39 at 4). Ortiz Colón, a PRIC architect, informed Lugo that the project would only be acceptable if all the existing building façades were to be preserved in their current state.

On October 19, 1989, Lugo and ARPE reached an agreement whereby the permits would be granted if the project complied with PRIC's façade recommenda-

tions. In response to the agreement with ARPE, PRIC informed that Lugo's supposed "PRIC endorsement" submitted to ARPE was not official since it had not been signed by an authorized officer. Hence, PRIC had not officially endorsed the project.

On September 10, 1991, Lugo sent a letter requesting PRIC's endorsement for the project's tax exemption. PRIC denied the application for endorsement. The final decision as to whether a potential tax payer is entitled to a tax exemption once it has PRIC's endorsement lies exclusively on the Secretary of the Treasury. PRIC's intervention is limited to one of endorsement. (Docket No. 39 at 9.) Since Lugo was not pleased with the decision, he requested the PRIC's Board of Directors to review the decision. After receiving documentary evidence and oral testimony, an official examiner recommended that the application for PRIC's endorsement for tax exemption be denied. (Docket No. 39 at 6.) The Board of Directors adopted said report and denied the application.[3]

Thereafter, Lugo sought review in the Puerto Rico Circuit Court of Appeals. The Puerto Rico Circuit Court of Appeals addressed Lugo's allegations that PRIC had endorsed construction of the Mall and that PRIC officials had made false reports in his application. On December 9, 1998, the Court held that it was clear that the endorsement for the construction was limited to certain corrective measures related to the tunnel running underneath the Mall and that said endorsement did not approve the work to be performed in the building. (Docket No. 39 at 11.) It expressly held that it was obvious that the Mall project had never obtained PRIC's official endorsement, and that during its development Lugo never seriously considered framing the Mall according to the best principles of historical preservation.

---

**3.** Plaintiff does not specify on which date the

Board of Directors adopted said report.

(Docket No. 39 at 12). It also held that Lugo had expressed in two occasions that he was not applying for a tax exemption and that he was now estopped by his own acts in pursuing such application inasmuch as he had waived it. In its conclusion, the Court expressed that Lugo did not establish that there were any irregularities in the PRIC administrative and final decision denying his application for the tax exemption that would justify reversal.

On January 14, 1999, the plaintiff filed a petition for certiorari before the Puerto Rico Supreme Court seeking review of the Court of Appeals decision. The Supreme Court denied certiorari on March 5, 1999.

On July 10, 2001, the plaintiff filed suit in the Mayaguez Court of First Instance alleging that PRIC had filed a false and fraudulent report which had caused the denial of the requested tax exemption. On March 12, 2002 The Mayaguez Court of First Instance granted defendants' motion for summary judgment on *res judicata* grounds and entered judgment against the plaintiffs' action with prejudice. Meanwhile, on October 2, 2001, plaintiffs had filed in this Court the present complaint against PRIC and the other co-defendants. Simultaneously with the filing of the Complaint, plaintiffs filed a request for a temporary restraining order, which was denied. (Docket No. 4.)

## DISCUSSION

### A. Motion to Dismiss Standard

■ Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–*

*Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiff is responsible for putting her best foot forward in an effort to present a legal theory that will support her claim. *Id.,* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### B. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. F.R.C.P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Government Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). A fact is material if it might affect the outcome of the suit under the governing law. *Morris–*

*sey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995).

In order to assist the court in the daunting task of searching for genuine issues of material fact in the record, this district adopted Local Rule 311.12. *See Corrada Betances v. Sea–Land Service, Inc.,* 248 F.3d 40, 43–44 (1st Cir.2001). This rule, requires, in relevant part, that a party moving for summary judgment submit, in support of the motion, "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12. In turn, the rule requires the party opposing a summary judgment motion, here Lugo, to submit a "separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific references to the record." D.P.R.R. 311.12. It is clearly established in this District that compliance with Local Rule 311.12 is critical, given that the Court will only consider the facts alleged in the aforementioned 311.12 statements when entertaining the movant's arguments. *See Rivera de Torres v. Telefónica de Puerto Rico,* 913 F.Supp. 81 (D.P.R.1995). Defendants, PRIC and Federal Insurance, filed the requisite 311.12 statement with appropriate references to the record. Defendants seek to support all the facts contained in their 311.12 statement with the findings of fact and conclusions of law made in the state court proceedings.

■ Plaintiffs opposed PRIC's summary judgment motion and recently opposed Federal Insurance's summary judgment motion. Plaintiffs, however, have failed to comply with the so-called "anti-ferret rule," as they have not presented a concise statement of material facts as to which there is a genuine issue to be tried. The Court is not required to "ferret through the record" lurking for facts that may favor the plaintiffs when those facts were not proffered under a counter-designation of facts as required by Local Rule 311.12. *Morales,* 246 F.3d at 33. "When a party opposing a motion for summary judgment fails to comply with the 'anti-ferret rule' the statement of material facts filed by the party seeking summary judgment shall be deemed … admitted." *Mendez Marrero v. Toledo,* 968 F.Supp. 27, 34 (D.P.R.1997); *Tavarez v. Champion Prods., Inc.,* 903 F.Supp. 268, 270 (D.P.R. 1995).

■ Here the plaintiffs took the risk "to sit idly by and allow the summary judgment proponent to configure the record." *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991). Although the nonmovant's failure to provide a statement of contested material facts does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road towards an easy dismissal." *Mendez Marrero,* 968 F.Supp. at 34. Since all material facts in the PRIC's and Federal Insurance's statements of uncontested material facts are deemed admitted, the Court need only examine whether, given the uncontested facts, PRIC and Federal Insurance are entitled to judgment as a matter of law.

## I. *Res Judicata*

Defendants argue that Lugo is barred from prosecuting this action by the doctrine of *res judicata,* as incorporated in 28 U.S.C. § 1738.[4] Plaintiffs on the other

---

4. 28 U.S.C. § 1738 provides in pertinent part as follows: "The records and judicial proceedings of any court of any … State, Territory or Possession [of the United States], or copies thereof, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as

hand sustain that the application of the *res judicata* defense is inapplicable to this case. They claim that the plaintiffs are different, that the cause of action under RICO is not the same and that this case falls under the fraud exception to the rule of *res judicata*. The Court disagrees.

■ "The doctrine of *res judicata*—meaning literally that the thing has been decided—binds the parties from litigating or re-litigating any issue or claim that was adjudicated in a prior case." *Suarez–Cestero v. Pagan–Rosa*, 198 F.Supp.2d. 73, 84 (D.P.R.2002). *Res judicata* (also known as, "claim preclusion"), forecloses litigation of all matters that have been decided in an earlier case, while the rule of collateral estoppel (also known as, "issue preclusion"), precludes re-litigation of issues actually adjudicated in an earlier proceeding. *Id.* (*citing* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction*, §§ 4404 and 4402 (1982)).

■ Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgment emerged. *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 466, 102 S.Ct 1883, 72 L.Ed.2d 262 (1982). Thus the question of the preclusive effect of a judgment issued by a Puerto Rico state court depends on Puerto Rico law. *See, Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

In Puerto Rico, judgments can be given preclusive effect only if they are final and on the merits. *See Millán v. Caribe Motors Corp.*, 83 P.R. Dec. 474, 1961 WL 13796 (1961); *Stitzer v. University of*

they have by law or usage in the courts of such State, Territory or Possession from

*Puerto Rico*, 617 F.Supp. 1246, 1254 (D.P.R.1985).

■ Under Puerto Rico law, the party asserting claim preclusion or *res judicata* must establish: (a) the existence of a prior judgment on the merits which is "final and unappealable", (b) the perfect identity of the thing or cause, and (c) the perfect identity of the parties and the capacity in which they acted. *Boateng v. InterAmerican University, Inc.*, 210 F.3d 56 (1st Cir. 2000). Defendants allege that all these factors are present in the case and that consequently *res judicata* forecloses this litigation.

a. *Prior judgment on the merits which is "final and unappealable"*

■ The Puerto Rico Supreme Court has repeatedly stated that in order to be given *res judicata* effect, a judgment must be "final and unappealable." *Rivera v. Insurance Co. of Puerto Rico*, 103 P.R. Dec. 91 (1974); *Sucesión De Pablo Zayas Berríos v. Berrios*, 90 P.R. R. 551, 1964 WL 14300 (1964). The denial of certiorari by the Puerto Rico Supreme Court is a final and unappealable judgment against Lugo. Therefore the requisite for finality is present for the application of preclusion.

b. *Identity of thing or cause.*

■ It is evident, from the Puerto Rico Circuit Court of Appeals decision, that the cause, facts and claims upon which the plaintiffs based their complaint in the State court are, in fact, the same as the cause and claims stated in the case before this Court. In *Lausell Marxuach v. Díaz de Yañez*, 103 P.R. Dec. 533 (1975), "cause" is defined as "the principal ground, the origin of the actions or exceptions which they are taken."

raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties", while "thing" is termed "the object or matter over which the action is exercised."

■ The requirement of identity of causes does not prevent the *res judicata* doctrine from being applied to a second case simply because the plaintiff alleges a new legal theory in the new case. *Futura Development v. Centex Corp.*, 761 F.2d 33, 44 (1st. Cir.1985). Lugo's cause and thing in the state litigation centered on the tax exemption. The cause and thing in the instant action is the *same* tax exemption.

While the previous State Court action and the present action may be premised upon different legal theories, they both arose from the same set of facts—denial by PRIC of Lugo's request for tax exemption. It was because of the denial of such exemption that plaintiffs claim that PRIC and the other co-defendants allegedly violated their rights. Thus, the Court fails to see how Lugo can characterize both causes of action as different, when they did, in fact, arise from the tax exemption controversy itself. Therefore, the required identity of object and cause between the State Court judgment and the present suit is present for *res judicata* purposes.

### c. *Identity of parties*

■ Plaintiffs point out that the present action contains new parties that were not parties in the State Court action. Nevertheless, the defense of *res judicata* is applied even when the named parties are different, as long as the real parties in interest are identical. *See, Arecibo Radio Corporation v. Commonwealth*, 825 F.2d 589, 591 (1st Cir.1987). Lugo, the owner of the Mall, was the applicant for endorsement by the PRIC of the project. In an attempt to circumvent the doctrine of *res judicata*, Lugo has added as co-plaintiffs;

ARPO, S.E., d/b/a "Plaza Suroeste Mall", Plaza Oasis & Hotel Oasis Inc., Southwest Investment Corporation and Inn Management. Since he is the owner of these corporations, there is no doubt that the real party in interest is Lugo.

■ The plaintiffs have also included as co-defendants PRIC employees; Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Héctor Cazul and Mildred González Valentín and CRIM; Ramón Nazario, Carlos Martínez, Manuel Velázquez, Orlando Mas, Orlando Hernández, and Osvaldo González Aviles. This is also an attempt to circumvent the *res judicata* doctrine inasmuch as the PRIC is the real party in interest since it acts through its officials and employees. As a result, the Court concludes that all parties are the same for *res judicata* purposes except Federal Insurance, which as insurer of the PRIC is entitled to assert such a defense in this case.

### d. *Public Policy—Fraud*

■ The Complaint alleges that several defendants from PRIC participated in a conspiracy by providing fraudulent testimony and/or altering files and records from plaintiff's building's records. Because of this alleged fraud, plaintiffs argue that *res judicata* should not be applied in this case.

■ In rare occasions where there is a great public interest at stake, the Supreme Court of Puerto Rico has allowed certain exceptions to the *res judicata* doctrine. *Bonafont Solis v. American Eagle*, 1997 WL 423416, **28–29, 97 JTS 86 (June 5, 1997). Under Puerto Rico law, *res judicata* will not be applicable when (1) a judgment was entered pursuant to an invalid acceptance by the defendant of the claim; (2)the court entering the judgment lacked jurisdiction to do so; (3) an attempt to appeal failed through no fault of the plain-

tiff; or (4) there was fraud. *Medina v. Chase Manhattan Bank*, 737 F.2d 140, 142–143 (1st Cir.1984)

Regarding the allegation of the alleged "conspiracy to commit fraud" for denial of PRIC's endorsement, the State Court held that PRIC acted properly because the denial was based on the plaintiff's failure to comply with PRIC's requirements. The sworn statements on which plaintiff's allegations rely contain numerous suppositions and statements regarding PRIC's endorsements of the Project. The subject matter of these statements has been previously presented in the State Court action.

The Puerto Rico Court of Appeals action decided the issue of PRIC's alleged fraud concerning Lugo's tax exemption request. Lugo could have submitted the sworn statements attached to the complaint during the initial administrative proceedings if he had adequately prepared for the same. Plaintiffs had the opportunity to fully litigate their claims both at an administrative level and before the Puerto Rico Circuit Court of Appeals on the fraud allegations presently before this Court. They cannot now pretend to relitigate these issues and have a second bite at the apple.

Several federal appellate courts have applied the doctrine of claim preclusion to cases in which plaintiffs in an earlier state court proceeding have failed to bring their fraud claims invoking RICO. In *Kaufman v. BDO Seidman*, 984 F.2d 182 (6th Cir. 1993), the Sixth Court applied the preclusion doctrine where plaintiffs had previously and unsuccessfully prosecuted a malpractice claim against their financial adviser. The Court held that plaintiff's RICO claims were precluded because the

factual issues of causation in the two actions were sufficiently similar to bar subsequent prosecution of a RICO claim in federal court against the same defendants.[5] Accordingly, Lugo is estopped under the doctrine of res judicata from bringing another action on the same grounds. Therefore, the plaintiffs's claims against PRIC; Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Mildred González Valentín, and CRIM; Ramón Nazario, Carlos Martínez, Orlando Mas, and Orlando Hernández in both their personal and official capacities must be dismissed.

## II. *The Sufficiency of the RICO Claims*

■ Even if the *res judicata* doctrine were not to apply, however, the Court finds that plaintiffs have failed to adequately plead a RICO claim. To substantiate the RICO claim, plaintiffs allege that defendants executed a racketeering scheme to defraud them and subsequently engaged in mail fraud and wire fraud *inter alia.*

■ The First Circuit has described the standard for a motion to dismiss in a civil RICO case as follows: The complaint must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. In other words, a court assessing a claim's sufficiency has no obligation to take matters on blind faith; it need not credit bald assertions, unsubstantiated conclusions, or outright vituperation. *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir.1991). Hence, to avert dismissal a civil RICO complaint must, at a bare

5. Similarly, in *Evans v. Dale*, 896 F.2d 975 (5th Cir.1990), the Court held that the doctrine of *res judicata* barred plaintiffs' RICO claim, because the claims of the parties had been the subject of a previous state court proceeding. The Court also found that the

plaintiff's wife could have brought her RICO claim in the earlier proceeding and her failure to do so was fatal to her subsequent effort to bring such a claim in federal court. *citing, Dibbs v. Gonsalves*, 921 F.Supp. 44, 49–50 (D.P.R.1996).

minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

Also, in order to recover under RICO, a plaintiff must prove that the defendant engaged in "prohibited activities" consisting of predicate acts which constitute a "pattern of racketeering activities" 18 U.S.C. §§ 1961–1968.

The Court has reviewed plaintiff's bald assertions and unsubstantiated conclusions, and concludes that the alleged criminal acts by the defendants do not have the same or similar purposes, results, participants, victims or methods. Plaintiffs' allegations that the defendants have acted fraudulently by acting, and conspiring to act, in a manner designed to deny them their property rights are conclusory and devoid of minimal facts substantiating them. Plaintiffs's' claims and testimony generally allege no more than that the defendants "acted in racketeering activities to defraud the plaintiff". Inasmuch as plaintiffs have failed to meet the pleading requirements for a RICO complaint to survive, their RICO claims against PRIC, CRIM, Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Mildred González Valentín, Ramón Nazario, Carlos Martínez, Orlando Mas and Orlando Hernández must be dismissed.[6]

### III. The Butler Act

It should be noted that plaintiffs seek to prevent further enforcement of the collection of taxes imposed by CRIM and also request monetary relief for the "fraudulent" tax assessments as a remedy. The Court finds that plaintiffs' requests are barred by the Butler Act.

The Butler Act prohibits suits in federal Court for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico. *See,* 48 U.S.C. § 872. The jurisdictional bar set forth by the Butler Act is not absolute. It does not apply to cases where the State courts lack a plain, speedy and efficient remedy. *Seatec Intern., Ltd. v. Secretary of the Treasury,* 525 F.Supp. 980, 981 (D.P.R.1981).

In this case the procedure afforded by the State legislature is plain, speedy and efficient. Plaintiffs prosecuted their claims and participated in several administrative and Court proceedings in which they had ample opportunity to vindicate their claims. These proceedings comply with the minimal procedural criteria required for this type of remedy.

Although plaintiffs may be dissatisfied with the state administrative and judicial procedure as a whole, they have not identified significant procedural flaws that render it inappropriate or corrupt. The remedy established by the PRIC complies with minimum procedural requirements imposed by the Supreme Court. It is clear that plaintiffs had their day in Court for purposes of the Butler Act and may not now seek to enjoin the collection of taxes imposed by the laws of Puerto Rico in this Court. Plaintiffs's claim against CRIM must be dismissed for lack of subject matter jurisdiction.

### IV. Plaintiffs' 42 U.S.C. § 1983 Claims Against Named Defendants in their official and personal capacities

Plaintiffs also allege that PRIC's actions constitute a violation to 42 U.S.C. § 1983 and seek damages. This type of

---

6. Co-defendants Héctor Cazul, Manuel Velázquez, and Orlando González Aviles have not opposed the claim against them. There-

fore the RICO claim against them may proceed.

remedy is also barred by the Eleventh Amendment. *See Acevedo López v. Police Dept. of the Commonwealth of P.R.*, 247 F.3d 26, 28 (1st Cir.2001). It is well established that the Eleventh Amendment bars a § 1983 action against a State, State Agency, or any State Official in his official capacity for monetary damages that would have to be paid from the state treasury. *See Wang v. New Hampshire Board of Registration in Medicine*, 55 F.3d 698, 700 (1st Cir.1995). Accordingly, plaintiffs's § 1983 claim against Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Mildred González Valentín, Ramón Nazario, Carlos Martínez, Orlando Mas, Orlando Hernández, Héctor Cazul, Manuel Velázquez, and Orlando González Aviles in their official capacities must be dismissed.

■■■ Plaintiffs also seek relief under § 1983 against the above co-defendants in their personal capacities.[7] It is well settled that in order for a claim to be cognizable under section 1983, plaintiffs must plead and prove three elements: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants's alleged conduct was causally connected to the plaintiffs' deprivation, *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir.1989). Hence, to succeed in a § 1983 action, plaintiffs must prove that defendants actions were a cause in fact or a proximate cause of plaintiffs' injury. *See Collins v. City Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■■■ Plaintiffs have proven the first element. The defendants were clearly acting under color of state law. Lugo, however, has failed to establish that he was deprived of a federally protected right, privilege, or immunity. Just because the defendants denied Lugo's application for the endorsement of his project does not mean that he was deprived of his property rights. There are also no convincing facts indicating that the defendants' conduct was causally connected to the plaintiffs' deprivation.

The Court, after engaging in a liberal reading of the Complaint, analyzing the alleged facts and indulging all reasonable inferences in favor of plaintiffs, finds that plaintiffs have not pled sufficient facts to establish a claim under § 1983. Plaintiffs § 1983 claim against co-defendants Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Mildred González Valentín, Ramón Nazario, Carlos Martínez, Orlando Mas, and Orlando Hernández in their personal capacities must be dismissed.[8]

### V. *Supplemental State Claims*

■■■ Since no federal claims remain, the court will dismiss all supplemental state claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3), except as to the defendants Héctor Cazul, Manuel Velázquez, and Orlando González Aviles given their failure to oppose plaintiffs' federal claims.

### *CONCLUSION*

In view of the foregoing reasons, Defendants motions to dismiss and for summary judgment (Docket No. 15,39, 65 and 87) are hereby GRANTED. Plaintiffs's RICO claims against CRIM, PRIC, Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Mildred González Valentín, Ramón

---

**7.** § 1983 expressly embraces actions to redress deprivations, under color of state law, of … rights, privileges, or immunities secured by the Constitution. *Pontarelli v. Stone*, 930 F.2d 104, 114 (1st Cir.1991).

**8.** Héctor Cazul, Manuel Velázquez, and Orlando González Aviles have not opposed the 1983 claims. Therefore the claims against them may proceed.

Nazario, Carlos Martínez, Orlando Mas, and Orlando Hernández both in their personal and official capacities are hereby DISMISSED. Plaintiffs' claims against CRIM, PRIC, Robert L. Bounds Dávila, Jorge Ortiz Colón, Doris Maza, Mildred González Valentín, Ramón Nazario, Carlos Martínez, Orlando Mas, and Orlando Hernández under § 1983 are also dismissed. Federal Insurance's motion to join PRIC's motion for summary judgment is granted and all claims against Federal Insurance are dismissed. The supplemental law claims against these defendants are dismissed without prejudice, pursuant to 28 U.S.C. § 1367. Plaintiffs' federal and supplemental claims against co-defendants Héctor Cazul, Manuel Velázquez, and Orlando González Aviles remain. The Court, however, sees no reason why these claims should not be equally dismissed for the same reasons that the claims against the other co-defendants have been dismissed. Accordingly, the Court orders plaintiffs to show cause on or before August 23, 2002, why the claims against the remaining co-defendants should not be dismissed.

IT IS SO ORDERED.